Your Honor, I'll be taking half the time, seven and a half minutes, to discuss the intermediate law question. And Mr. Dimaya's counsel, I represent Amiki, and Mr. Dimaya's counsel will take the remaining seven and a half minutes to answer questions about this. But your rebuttal comes out of that too, so had you thought that through? We'll be taking two minutes for rebuttal, so that will come out of Mr. Felton's time. And I have one other question. We have a law student here? Correct. All right. And you have, so you're a certified law student, and I'm assuming that you have your certified mentor here. Is that correct? Yes. Okay. Thank you. Good morning, Your Honor. Good morning. Sejal Zota for Amiki from the National Immigration Project. I'll be sharing argument with Mr. Felton, who is Mr. Dimaya's counsel, and I will address a question as to whether the circuit's prior precedent in the Becker line of cases is inconsistent with the Supreme Court's decision in Moncrieff and Des Campes, and the District's counsel will address all other issues, jurisdictional questions, questions involving the record, and how that applies to Mr. Dimaya's case. I have three main points I would like to make. Are you going to talk about Rodriguez-Castellon? I can address that case, Your Honor. We believe that Rodriguez... What did you say, Madam Senator? What was your answer? I said we can address that case, Your Honor. Well, someone needs to address it. I don't know if it's you or if it's, who's going to address it? I'll be addressing that, Your Honor. Okay. You can start in the order you want, but you need to address that. Okay. First of all, Your Honor, we believe this case requires this court to revisit its prior precedent in light of Moncrieff and Des Campes. In Moncrieff and Des Campes, the Supreme Court clarified that the categorical approach is an elements-based approach, and it requires courts to look at the least culpable conduct in applying that analysis. That's the benchmark for a comparison. Second, this court must apply Moncrieff and Des Campes to assess whether California residential burglary carries a substantial risk of force. In fact, that's exactly what the First, Fourth, and Eighth Circuits have done. Okay, but we're in the Ninth Circuit. Yes, Your Honor. If this is a 16B crime of violence issue, then how do you get past Rodriguez-Castellon? Your Honor, I would submit that Rodriguez-Castellon is not controlling here, and because it did not meaningfully consider Moncrieff and Des Campes. Wasn't it after it? Yes, Your Honor. I believe that the briefs... Should I tell Judge Acuda that she didn't meaningfully consider that, or... Well, Your Honor, the briefs in the oral argument in that case occurred prior to Des Campes, and Pacer indicates that Petitioner's Counsel did not file a 28J letter in that case, and Pacer indicates that the court in that case did not ask for supplemental briefing post-Des Campes. And, Your Honor, if you look at the actual language in that case, there's no discussion of Des Campes in reference to the ordinary case. So I would submit that they didn't really have the benefit of Des Campes and Moncrieff in deciding that case. Well, is Des Campes a crime of violence case? No, Your Honor, Des Campes arose in a generic burglary context. Okay, so isn't that significant? If you're telling us that Des Campes should wipe out Rodriguez-Castellon, but they're not... One's a crime of violence case, a 16B case, and the other is another type of case. Yes, Your Honor. Generic burglary is the context for Des Campes. However, Des Campes and Moncrieff both fundamentally changed how courts apply the categorical approach in any context, and that applies to risk-based definitions, that applies to 16B. And we know that from Leocal that the categorical approach applies to 16B, and that's why other courts post-Des Campes and Moncrieff have been applying those cases to 16B, to risk-based definitions. Your Honor, also under Miller v. Gammey, this court has said that intervening Supreme Court decision doesn't have to expressly overrule a prior precedent, and it doesn't have to And in Gilvey-Stern, this court said that not only are panels bound by the holdings of the Supreme Court cases, but by the modes of their analysis. And so under that test, Your Honor, we believe that this case meets the irreconcilability test. We strongly believe that. Well, okay. I have a question. I think Rodriguez-Castellon, there's a very persuasive argument that it does control here, but then how do you reconcile your reading of Des Campes and Moncrieff with the Supreme Court's holding in James v. United States, a 2007 case that says the proper inquiry is whether the conduct encompassed by the elements of the offense in the ordinary case presents a serious potential risk of injury to another. A residential burglary in a home, a residence, that's an uphill battle as far as I'm concerned. Yes, Your Honor. And I think the key to the quote that you just read, I have the same quote here, is that the proper inquiry is whether the conduct encompassed by the elements of the offense in the ordinary case has a serious potential risk of injury. And so, Your Honor, James has always required that the evaluation of the risk be done in reference to the elements of the offense, and that's consistent with Moncrieff and Des Campes. All we're saying is that, you know, whether California burglary carries a risk of violence, that has to be done in reference to the elements, and here there is no element of unlawful entry. That doesn't have to be... Well, except... But if we have to deal with the ordinary case, I was a California lawyer, a prosecutor for ten and a half years, and a California judge that heard cases for a very long time, and the ordinary case isn't someone that got invited into the House. So what evidence... If we have to look at the ordinary case, what evidence is there in the record that prosecutions under California's Section 459 allege unlawful entry, and how many concerned individuals who were entered into... They were invited into the House? Well, Your Honor, so under Moncrieff, we have to look at the minimum conduct under the statute of conviction, and determine whether that has a risk of violence. And here, the minimum conduct is privileged entry burglary, and we know that from the cases. For example, in People v. Nguyen, when someone was invited onto the premises to purchase some advertised goods, and then passed on a bad check. That is the minimum conduct under California residential burglary, and Your Honor, I submit that that doesn't carry a substantial risk of force, as noted by this court in United States v. Parker, and that's because there's no so-called intruder. There isn't someone trying to break in, and prompting an investigation. Someone lawfully on the premises, you know, who is there... Oh, but if someone rings the doorbell and says, can I use your phone, and then the second they get in, they rob you and rape you, that's pretty violent. Yes, Your Honor, and so we are simply saying that the evaluation of risk has to be done with reference to the minimum conduct, a privileged entry burglary, and I'll leave it for this court to decide, you know, what that outcome is, but, you know, in People v. Salem, the California court upheld a conviction where someone's, you know, selling fraudulent securities to someone. The person was invited into the house, and the court there specifically noted that the person wasn't in any danger, and Your Honor, I'd also note, with respect to the ordinary case analysis, in James... Eve, you just tapped the time. Oh, I'm sorry. All right. I'll just end with this one last point. In James, in coining that phrase, ordinary case, the court cited to Duaneus Alvarez, which put forth the realistic probability test, and so, Your Honor, what both those standards do is they exclude fanciful hypotheticals. They exclude, you know, acts of legal imagination, but they don't exclude actual prosecutions that demonstrate an absence of risk. So, thank you. Thank you. Good morning. Good morning, Your Honors, and may it please the Court, Justin Felton, supervised by Andrew Knapp for the petitioner, Devina. Your Honors, where the Supreme Court has laid down law in light of Decomp here, this Court has no need to remand to the Board of Immigration Appeals to come to a contrary conclusion. This case is controlled by Decomp, arguably, as our position is, and where there has been decision that controls, there's no need to remand us here. This Court in Rivera-Cortez has held that where a reversal is squarely controlled by a straightforward issue of new case law, it does not require the Board's expertise. In fact, here, to allow the Board a second bite at the apple to create alternative theories of removability would not be just unfair, but again, it doesn't require the Board's expertise when dealing with a criminal statute. So what do you do with Rodriguez-Castellon? Because it wasn't, Decomp wasn't a crime of violence case, and this is a 16B case, and Rodriguez-Castellon is a Ninth Circuit 16B case. Correct, Your Honor. In my reading of that case is that, although it is dealing with the ordinary case, here when we're looking at 459, we must be looking at the statute's language itself, and because the statute itself permits both lawful and unlawful entries, in light of Decomp, and even looking at Rodriguez-Castellon, we have to see what sort of conduct would be culpable here, as articulated by... But the ordinary case analysis is different than the Decomp analysis, and I guess, what evidence, you know, what is your theory that the ordinary case in California is someone that's invited into the House? Your Honor, in... I mean, I would submit that that's an outlier, and then under Rodriguez-Castellon, then that doesn't reach the result you're asking for. Correct, Your Honor, and perhaps I should leave rebuttal time for amici counsel to describe that in more detail. However, to answer your question as best of my ability, in looking at the two cases, although Decomp wasn't a 16B case, it does articulate that the modified categorical approach is only to be used in limited circumstances, not a case like this. And looking at the statute again, in the ordinary case analysis, the court was reading elements beyond the statute, and because here, first-degree burglary in California can require either a lawful or unlawful entry, it doesn't categorically meet the definition of generic burglary as this court... Excuse me, not as this court, but that would meet a crime of violence under 16B. There is no substantial risk in many cases that force would be used. Further, where the stand... How do you... What do you have to support that proposition that when someone, when a burglary occurs in a residence, that there's not a likelihood of force? I mean, other than just saying that. Yes, Your Honor. The case, just bear with me for just one moment, it's a securities case in which the individual was allowed into the premise lawfully and was convicted of first-degree burglary in It is People v. Salome, Your Honor. Okay, that wouldn't really be the ordinary case in California, would it be? No, Your Honor, it's just that case articulates and supports the proposition that there are theoretical... Excuse me, not theoretical. There are propositions that weren't considered by this court in Becker in saying that the ordinary case, in fact, that all cases of first-degree burglary would involve some unlawful entry, and the board erred here in this case by looking to the record to define this specific charge, the 2007 charge of Mr. DiMaia, as an unlawful entry. If I may, before Judge Callahan uses all of your time up, the government seems to rely on the fact that DiMaia was convicted of first-degree burglary. Do we have any information as to whether California prosecutes defendants for first-degree burglary only when it was an unlawful versus lawful entry? Your Honor, I think the government seems to take contention with the fact that Mr. DiMaia did plead to first-degree burglary, both in front of the immigration judge, and on both accounts, the 2007 crime and the 2009 first-degree burglary. From the record, it seems as though, based on the charge that he unlawfully entered, that it would be first-degree burglary in this case. However, the statute itself, first-degree burglary in California, allows both lawful and unlawful entry. So it is possible within the way- But would it make a difference if it turned out that prosecutors in California only use the first-degree burglary charge if it was an unlawful entry? Your Honor, it's Petitioner's stance that in light of the comp, that sort of inquiry would be irrelevant. Doesn't the comp deal directly with that question and say there are two types of entry in California under this statute, the lawful and the unlawful? Correct, Your Honor. The statute itself does specify both lawful and unlawful entry. And here, because- But the comp treats them both as if they are used in California for convictions under 459. Correct, Your Honor. And I see that my time has run down. I would like to save- It's okay. It's okay. I'd like to get this answer done. So 459, yes. But then there's a thing about in 460, degrees in construction of the section. So it seems to prohibit a qualitatively different type of crime. And I'm just wondering if that's unlawful or lawful entry. Your Honor, as Petitioner's reading of section 459, even in light of 460, that 459 does create culpability under both lawful and unlawful entry. And because that is the case, it cannot categorically be defined as a crime of violence under 16B. Because it cannot allow even lawful home invitees to be convicted of burglary. The de comp categorical approach cannot apply to allow the board to, or excuse me, the government, to look beyond the actual statute itself into the record of conviction to pull facts out. And further, there's no need to remand here to the board where intervening law has made an impact on this case. It doesn't require the board's expertise. So unless there's further questions, Your Honor, I will remain- We'll give you two minutes to rebuttal. Thank you, Your Honors. Counsel. Good morning. Good morning. May it please the court, Nancy Cantor, on behalf of the Attorney General. Your Honor, the issue here is simple. Whether or not Petitioner's first degree conviction- Well, I think you started out with, I don't think it's that simple. It is a very simple issue, and I'm happy to address any questions- Well, simple for you, but maybe not simple for us. Okay, go ahead, if you can make it simple. In Becker and its progeny, this court definitively stated that a 459 first degree conviction is a crime of violence under 16B. Neither Moncrief, Discamps, or even the board's recent decision in Charez, changes this result. Moncrief, as Your Honor discussed earlier, was a qualitatively different type of analysis. It was not a crime of violence case. Thus, the minimum conduct test should not apply to a crime of violence type inquiry where a risk-based analysis is used. But do you agree that we apply the same analysis that the Supreme Court used in Discamp and Moncrief in immigration cases? So, why would there be a distinction where we're looking at 16B as opposed to criminal statute? Well, Your Honor, James and Leocol answer that question. Crime of violence cases are different than usual generic definition type cases. So, instead of looking at an outlier type case, we look at the ordinary case. And if in an ordinary case, there is a substantial risk of harm that will be used, you automatically have a crime of violence. How do we determine what the ordinary case is in California? Well, the California case law is instructive in this case. To discuss what Your Honors were asking about recently, the government's position today is that under California law, first degree burglary, the critical issue is whether or not there is entry into a dwelling. The entry, whether privileged or not, is immaterial. The key is whether or not it is an inhabited dwelling. The California jury instructions, I believe it's 1701. Your answer then is 459 covers both types of crime when you enter lawfully or unlawfully. They're treated equally under 459 and both occur regularly in California. Government's position is correct, Your Honor. Becker says the danger that is inherent in residential burglary is because it's a residential burglary. In Becker, it involved whether or not the burglary happened night or day and said that was immaterial because the key is whether or not it is a residential burglary. But Becker also said we assume this only applies to unlawful entry and then later cases modified that. Well, you're correct, Your Honor. But California jury instructions now, 1701, make clear... You wrote that, didn't you? You wrote Becker. I did. I think he knows what it said. I'm not arguing with him, wisely so. California jury instructions specifically state that burglary, 1701, burglary is divided into two degrees. If you conclude that the defendant committed a burglary, you must then decide the degree. First degree burglary is the burglary of an inhabited house, vessel, floating home, trailer, coach, part of a building. It makes no statement with regard to whether it's invited or uninvited entry. I don't think you're arguing something that anybody disagrees with. No, but the first degree, that's something that follows the generic definition of burglary. You don't just give that one. Excuse me, Your Honor. Read that 1701 again. Burglary is divided into two degrees. If you conclude that the defendant committed a burglary... All right, but you also give a burglary instruction before that. That's what judges do. So you can't really say that... I think when you look at the ordinary case, is the invited person, is that the ordinary case? I don't agree... Well, I might agree with some things that you're saying, to say that the ordinary case in California is people are invited into the house and it's the residential part. I think you're wrong. Well, absolutely, Your Honor. In the ordinary case, it is an uninvited individual into a dwelling. There are two different types of entry. Excuse me? As the court has said, there's the invited entry and the uninvited entry. They're both covered by this section. Correct, Your Honors. And as a result of that, the section cannot cover, it's not a generic crime. And therefore, we can't even apply the modified categorical approach to it. Because a substantial part of the statute is for the uninvited entry. I might not be following precisely what you're saying, but if I... Well, like Elizabeth, they may or may not have broken an entry and so committed generic burglary. Correct. But 459, the crime of which she was convicted, does not require the fact finder or the jury or judge to make that determination. Because generic unlawful entry is not an element or an alternative element for 459, a conviction under that statute is never for generic burglary. They don't say, well, that's an occasional outlier kind of entry and therefore we overlook it. They treat it as one of the two ways of establishing the element. Absolutely, Your Honor. But this camp's was a generic burglary offense. Here we have a crime of violence case where we look at the ordinary type... But that doesn't change the types of burglary that are occurring under the statute. Correct, Your Honor. Even if there is an outlier case where you have an invited individual into a house... But they didn't say that was an outlier case. They said that was one of the two alternative methods of violating the statute. And for that reason, if it were an outlier, they would have said, we're not going to count that out. But they said because lawful entry is one of the two ways of establishing the element, we can't treat any of them as generic burglaries. Correct, Your Honor. And that's this camp's, which is a generic burglary case. They were determining whether it was a violent felony, correct? Yes. And we're looking at a risk of substantial... We're looking at a substantial risk. A crime of violence. So the question is that... And then we have Rodriguez-Castellon in the Ninth Circuit that says how you look at a crime of violence. So the question is does... If we're bound by Rodriguez-Castellon, then that's one thing. But they're saying that DeCamp is that Rodriguez-Castellon did not consider DeCamp and therefore, I don't know, that's how they're distinguishing it. How are you... Are you saying DeCamp does not control this or what are you saying? Yes. Government's position today is DeCamp does not control this. Because? The issue in DeCamp's was was reckless intent. Was whether or not was with regards to the intent element. Here we're looking at a risk of substantial harm. We're looking at a risk of substantial harm, not the actual intent element. So we're looking purely at whether or not an individual who enters into a dwelling in the ordinary case creates a risk of substantial harm. Even assuming that DeCamp's applies... But then when you said the ordinary case you're flat out wrong that juries are not instructed that you just read the second instruction if they find the person guilty of burglary. So then the issue is what's an ordinary case? If it falls under the Castellon case, Rodriguez-Castellon, then what's the ordinary case in California and how do we know that here? What instructs us on that issue? How do we know what the ordinary case in California is? We look at the types of cases that California prosecutes. And what type of cases does California prosecute? The large majority, vast majority of them are those in which an uninvited guest has entered, or an uninvited individual has entered into a dwelling. ... And then you go over the cases and say you're just as guilty... ... of that burglary... ... ... And the Supreme Court said for that reason you can't treat that kind of a burglary as being covered by the federal statute. But that just means nothing because they're just outliers. ... It doesn't mean nothing. It doesn't mean nothing, Your Honor. Well, what does it mean when they say there are two parts that satisfy an element? They directly, I mean, carefully considered that and said this statute covers two types of entry. We have lawful entry, we have unlawful entry. But because both parts are considered, we can't consider this a generic burglary. And therefore we can't even apply a modified categorical approach because we have these lawful entries which are covered by the statute. Now, they've spent an awful lot of time saying how you treat 459 because it covers both types. They don't say it's not an average case, it's not a normal case. It's just a... It's an important part of the statute. Correct, Your Honor. But we have to look back at the Supreme Court's decisions in James and Leocal which deal specifically with this crazy world of crime on my lifetime's basis. I think James, in the Florida statute, that was analyzing whether it was, whether it fell under the residual clause of the ACCA. And there, that involved the crime had involved a potential risk. Whereas here, the crime has to involve a substantial risk. And those are two very different standards. But Your Honor, in crimes of violence type cases, the inquiry is simply different. We... The Supreme Court has rejected that a given crime satisfies a risk-based generic crime of violence type definition only if all violations of the criminal statute actually present a risk in the... Well, I have to say I was as surprised as anybody with this camps and and the impact it's having on various laws. But it would seem to me, if we were to read it take it at its word then maybe California needs to reenact the crime of burglary. If it wants to make a difference between unlawful... create a difference between unlawful and lawful entry for a predicate to serve as a predicate for a burglary. And maybe that's just what we're left with. I think there is somebody on the Supreme Court or somewhere, some commentary that said, after this camps all the states are going to have to reevaluate their criminal laws because of the distinction between divisibility and non-divisibility. So it's... That is true, Your Honor. It does create a difficulty for us. But I mean in that regard, I'll direct the court's attention to footnote 6 of this camps. At the very end of its decision it declines to address the potential risk analysis. That's under the ACCA's residual clause but the court is clearly limiting or attempting to limit this camps to generic burglary. Not to these other types of situations in which you conduct a risk-based analysis. What do you say about the fact that the Supreme Court says that the jury doesn't ever have to decide whether there was a lawful entry or an unlawful entry. They say... So we don't... In the ordinary case, in all the cases practically, there's no reason that the jury would determine whether it's a lawful entry or an unlawful entry. So I don't know how that helps us then determine what is an ordinary case. And Moncrief tells us that when we apply this category we presume that the conviction rested upon nothing more than the least of the acts criminalized. Now the least of the acts criminalized are the unlawful entries. And so not only is the jury not asked to decide whether it's lawful or unlawful but we presume that it's on the basis of the least of the acts, which would be unlawful. I mean lawful is that. Well, Your Honor, the government's position today is one, this camps unlawful, lawful. That decides the issue with regards to generic burglary. It doesn't decide the issue with regards to a crime of violence under 16b. Because we're looking, there's an ordinary case and substantial risk analysis that needs to be performed. When the jury doesn't decide. The jury isn't asked to tell you whether it's a lawful or an unlawful entry. So how do you know what an ordinary case is? Well, you can only look at the cases in which California has convicted individuals under 459 and found individuals guilty for residential first degree burglary. Yes, residential burglary, which doesn't tell you whether it's lawful or unlawful. No, but there might be, you know an outlier case here or there or even a dozen out of hundreds. It's an outlier. It says the jury doesn't decide. It doesn't matter whether it's lawful or unlawful under the California statute. So you go and look at the jury verdict and it won't tell you. Government's position today is that, I mean under the crime of violence, under this What was your position yesterday? That was our position yesterday, too. It hasn't changed. And I'll briefly discuss Moncrief. That's a generic definition case. Your time is up, so be very brief. Well, that's all I have to say. That's a generic definition case. It's not a crime of violence case. It muddles the water significantly, but Moncrief was not looking at crime of violence risk-based type analysis. They were looking at generic definition type cases which are simply distinguishable from the crazy world of crime of violence cases that we find ourselves in today. Thank you. Thank you. Thank you. You have not more than two minutes. I'll try to be very brief, Your Honor. I would just second Your Honor, what we As you've pointed out, in Des Campes, the Supreme Court clearly found that the California burglary statute has no element of unlawful entry. That is something that the government does not have to prove beyond a reasonable doubt for a defendant to be convicted under that statute. And it's our position that unlawful entry facts, therefore, are conduct. It's not something tethered to the elements. It's not something that has to be proven. And so those unlawful entry cases cannot be those facts can't be considered when determining whether California burglary presents a risk of violence, because that would be conduct. And the Supreme Court in Montcrieff and Des Campes said the categorical approach is an elements-based approach. And so we have to tether that risk evaluation to the elements of the offense. And, Your Honor, when we look at privileged entry burglary, I would submit that it doesn't carry a substantial risk of force because someone is lawfully on the premises. They've been invited onto the premises. And in James, the Supreme Court said that the risk of force arises from a break-in, from an intruder being in a place where he shouldn't be. That's what prompts the investigation. And so, Your Honor, in closing, I would just, we would ask this Court to do as the First and Eighth Circuits have done in overturning its prior analysis, and we would ask this Court to hold that the Becker line of cases is no longer good law. Thank you. So are you asking us to also say that Rodriguez-Castellon is wrong? We decided based on Des Campes? Your Honor, I wouldn't take that position. I think the issue before this Court is whether the Becker line of cases continue to be good law, and I would submit that they're not.  deals with a crime of violence, just like this deals with a crime of violence. It does, Your Honor. It deals with a crime of violence, though California burglary was not there, and I think it would be speculation for me to say whether the result in that case was right or wrong under the correct application of the Supreme Court's cases in Des Campes and Moncrief. Thank you. Thank you all very much. The case just argued will be submitted. The Court will stand in recess for the day. Thank you for an excellent argument. Thank you for doing pro bono work. We appreciate that for the Court. It's helpful to the Court to discuss these issues and it was good argument and as a student, we hope that you come back when you're a lawyer because you both did an excellent job and were well prepared. Thank you. And we thank the government because you worked to almost pro bono.
judges: REINHARDT, WARDLAW, CALLAHAN